JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:26-cv-7172-SK Date: September 11, 2026

Title Liggins Woods Enterprises, LLC v. General Motors LLC

Present: The Honorable: Steve Kim, United States Magistrate Judge

| A. Silva-Elder | n/a |
| --- | --- |
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiff(s)/Petitioner(s): None present | Attorneys Present for Defendant(s)/Respondent(s): None present |

**Proceedings:** (IN CHAMBERS) **ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND [ECF 10]**

## I. BACKGROUND

In November 2023, plaintiff Liggins Woods Enterprises, LLC leased a 2024 Chevrolet Blazer manufactured by defendant General Motors, LLC ("GM"). (ECF 1-2 at 5; ECF 10 at 4). Plaintiff alleges that the vehicle displayed defects during the applicable warranty period, but that GM could not repair it after a reasonable number of attempts. (ECF 1-2 at 5–6). It also alleges that GM failed to timely repurchase or replace the nonconforming vehicle as required by California's Song-Beverly Consumer Warranty Act. (*Id.* at 6-7) (citing Cal. Civ. Code § 1790 et seq.). And it claims that GM "willfully violated the Song-Beverly Act." (*Id.* at 7). Based on these allegations, plaintiff sued GM in Los Angeles County Superior Court. (ECF 1 at 1; ECF 1-2 at 3–10).

In its complaint, plaintiff demanded (as pertinent here) actual damages, the maximum civil penalty—"in the amount of two times Plaintiff's actual damages"—allowed under the Song-Beverly Act, and reasonable attorney's fees. (ECF 1-2 at 10). GM answered and later removed the case to federal court invoking diversity jurisdiction under 28 U.S.C. § 1332. (ECF 1; ECF 1-3). In its removal notice, GM alleged complete diversity of citizenship and an amount in controversy exceeding $75,000. (ECF 1 at 2–6). But because plaintiff's complaint on its face alleged no specific amounts for damages, penalties, or fees, GM estimated the minimum amount in controversy based on the apparent lease value alleged in the complaint, less statutory deductions, plus the

maximum potential civil penalty for willful violations of the Song-Beverly Act. (ECF 1 at 4–6). Plaintiff now moves to remand the action to state court arguing that GM has failed to carry its burden of proving the minimum amount in controversy. (ECF 10, 14).

## II.
## DISCUSSION

The amount in controversy needed to establish federal jurisdiction is the "amount at stake in the underlying litigation." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018) (quoting *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2016)). Because GM is the removing party, it bears the burden of establishing the amount in controversy when removal is challenged. *See Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009); *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 978 (9th Cir. 2013). And where, as here, the amount in controversy is not readily ascertainable on the face of the complaint, GM must establish that minimum jurisdictional amount by a preponderance of the evidence. *See Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022). "Where doubt regarding the right to removal exists, a case should be remanded to state court." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (per curiam); *see Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.").

GM argues that the amount in controversy—even before possible attorneys' fees—is at least $103,211.01. (ECF 13 at 11, 21). To arrive at that figure, GM started with "the $47,403.67 lease amount alleged in the Complaint," which is pled as the "amount paid/payable" under the relevant "Lease Agreement." (ECF 13 at 10; ECF 1 at 4–5; ECF 1-2 at 5). But the lease agreement isn't attached to the complaint, nor has GM produced a copy of it. GM then conducted a "preliminary investigation" that "estimated $13,000.00 in total deductions." (ECF 1 at 4–5). Those deductions include a statutory mileage offset calculated from when plaintiff "first presented the Subject Vehicle for repairs in January 2026, with approximately 25,218 miles on the odometer." (ECF 1-2 at 5; ECF 13 at 10). They also include other deductions for third-party service contracts, a manufacturer's rebate, and negative equity. (ECF 1 at 5). Subtracting those total deductions from the starting $47,403.67 figure thus yields a total of $34,403.67 as GM's calculation of actual damages. (*Id.* at 5; ECF 13 at 10–11).

What's missing from GM's calculation, however, is any evidence of what the $47,403.67 represents in terms of the subject vehicle's lease value. "Actual damages under the Song-Beverly Act are equal to the actual price paid or payable by the buyer, minus the reduction in value directly attributable to use by the buyer." *Saldana v. Gen. Motors, LLC*, 2026 WL 2212788, at *2 (C.D. Cal. July 31, 2026) (quoting *Lukas v. Gen. Motors, LLC.*, 2025 WL 3456648, at *5 (C.D. Cal. Dec. 1, 2025)) (quoting Cal. Civ. Code § 1793.2(d)(2)(B)–(C)) (cleaned up). "But if a plaintiff leased the subject vehicle rather than purchased it, . . . the calculation of actual damages is slightly different." *Gomez v. Nissan N. Am., Inc.*, 2025 WL 26368, at *3 (C.D. Cal. Jan. 3, 2025). A "lease situation differs from a purchase inasmuch as the actual amount paid on the lease and the mileage offset could vary widely depending on the terms of the lease, the time elapsed on the lease, and how much Plaintiff drove the car." *Cuevas v. Ford Motor Co.*, 2022 WL 1487178, at *2 (C.D. Cal. May 11, 2022).

Thus, "district courts in this circuit consider the amount a plaintiff has actually paid on [the] lease, rather than the total value of the lease, to determine whether the amount in controversy has been met." *Morris v. Mercedes-Benz USA, LLC*, 2026 WL 1179858, at *2 (C.D. Cal. Apr. 30, 2026) (quoting *Cuevas*, 2022 WL 1487178, at *2); *see, e.g., Ambartsumyan v. Nissan N. Am., Inc.*, 2026 WL 2405363, at *1 (C.D. Cal. Aug. 17, 2026). And that means the statutory "mileage offset applies only to the payments Plaintiff actually paid to date" on the lease. *Poursalimi v. Mercedes- Benz USA, LLC*, 2026 WL 412468, at *3 (C.D. Cal. Feb. 12, 2026). This approach "is consistent with the logic and purpose of the Song-Beverly Act to make the consumer whole" and "with the general principle of restitution" embodied in the statute. *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1008 (N.D. Cal. 2002). Otherwise, the awarded damages "would compensate plaintiffs for a larger portion of the car than they have earned through their lease payments." *Gomez*, 2025 WL 26368, at *4 n.1.

Yet here, GM has produced no evidence of how much plaintiff paid under the lease in question. *See Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). There is no lease agreement, no lease payment history, and no basis—including in the complaint—to deduce the length of the lease. "Without evidence as to the amount 'actually paid' by Plaintiff[] on the lease, Defendant's actual damage calculations are speculative." *Yeremyan v. Mercedes-Benz USA, LLC*, 2025 WL 1723156, at *2 (C.D. Cal. May 13, 2025). It is beside the point, then, that plaintiff also seeks a maximum civil

penalty under the Song-Beverly Act. Even if its allegations are otherwise sufficient to place that penalty in controversy, a nonspeculative predicate amount of actual damages is "necessary to determine the total civil penalty." *Edwards v. Ford Motor Co.*, 2016 WL 6583585, at *4 (C.D. Cal. Nov. 4, 2016); *accord Sanchez v. FCA US, LLC*, 2026 WL 350771, at *3 (C.D. Cal. Feb. 6, 2026). Since GM's underlying actual damages figure is speculative, "any civil penalty calculation is likewise speculative." *Rafael v. Porsche Cars N. Am., Inc.*, 2026 WL 1075683, at *3 (C.D. Cal. Apr. 20, 2026). GM has thus not met its burden to establish the minimum amount in controversy with nonspeculative information. *See, e.g.*, *Arnao v. Mercedes-Benz USA, LLC*, 2023 WL 3480872, at *2, *4 (C.D. Cal. May 15, 2023) (remanding because defendant "offers virtually no information about . . . the amount [plaintiff] paid on the lease, the time elapsed on the lease, or any other information probative of the measure of damages"); *West v. FCA US LLC*, 2024 WL 3298911, at *5, *7 (E.D. Cal. July 3, 2024) (same); *Cruz v. Mercedes-Benz USA, LLC*, 2020 WL 5797917, at *2, *4 (C.D. Cal. Sept. 29, 2020) (same).

## III.
## CONCLUSION

For all these reasons, the court GRANTS plaintiff's motion for remand to state court. (ECF 10). The Clerk of the Court is ordered to transmit the record of this case to the Los Angeles County Superior Court in Case No. 26STCV16958. Meanwhile, all dates or deadlines—including the scheduling conference set for September 16, 2026—are vacated.

IT IS SO ORDERED.